FILED
AT 8:25 O'CLOCK A M

No. 35,914

OCT 1 1 2011

DEBRA ABSTON · CLERK, DISTRICT COURT
TITUS COUNTY, TX
_____ DEPUTY

| | | |
|---|---|---|
| ASHLEY SHELTON, *Plaintiff*, | § § § § | IN THE DISTRICT COURT |
| v. | § § | TITUS COUNTY, TEXAS |
| SYNERGY CARE, INC., *Defendant*. | § § § | ___th JUDICIAL DISTRICT |

## SHELTON'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE

Plaintiff Ashley Shelton complains of Defendant Synergy Care, Inc. and for cause of action would show the following:

### Discovery

1. *Discovery Control Plan.* Pursuant to Rule 190.3 of the Texas Rules of Civil Procedure, Discovery Control Plan **Level Two** governs this lawsuit.

2. *Request For Disclosure.* Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Defendant Synergy Care, Inc. is requested to disclose, within fifty (50) days of service of this request, the information described in Rule 194.2 of the Texas Rules of Civil Procedure.

### Parties

3. Plaintiff Ashley Shelton ("Shelton") is a citizen and resident of the State of Texas.

4. Defendant Synergy Care, Inc. ("Synergy") is a foreign, for-profit corporation, organized under the laws of Louisiana. It is in good standing. It may be served with process by serving its registered agent, which is Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

### Jurisdiction

5. This Court has subject matter jurisdiction because district courts are constitutional

Shelton's Original Petition and Request For Disclosure                                                  Page 1

A TRUE COPY
of the original hereof, I certify
DEBRA ABSTON
District Court Clerk
Titus County, Texas
This 4th day of November 20 11
By _____ Deputy Clerk

courts of general jurisdiction.

6. This Court has personal jurisdiction, both general and specific, over the Synergy because it does business in Texas. Also, Shelton's causes of action against Synergy arose in Texas.

### Venue

7. Venue is proper in Titus County because all or a substantial part of the events giving rise to Shelton's causes of action occurred there. TEX. CIV. PRAC. & REM. CODE §15.002(a)(1).

### Material Facts

8. Synergy employed Shelton. Accordingly, Synergy was Shelton's employer, and Shelton was an employee of Synergy.

9. Synergy assigned Shelton to work in Mount Pleasant, Titus County, Texas.

10. Synergy assigned Shelton to work in Mount Pleasant, Titus County, Texas – specifically, at one of Synergy's customers called "The Villas of Mount Pleasant," which was located at 2530 Green Hill Road, Mount Pleasant, TX 75455 (hereinafter "Customer").

11. Shelton became pregnant while employed at Synergy.

12. On January 19, 2011, Shelton's doctor placed Shelton on bed rest indefinitely due to premature contractions.

13. On January 19, 2011, Shelton's doctor placed Shelton on bed rest indefinitely due to premature contractions, whereupon Synergy placed Shelton on leave pursuant to the Family and Medical Leave Act ("FMLA").

14. Synergy fired Shelton on February 7, 2011.

15. Synergy fired Shelton on February 7, 2011, when her supervisor, Michael Laudadio, transmitted an email with a termination letter attached to it.

Shelton's Original Petition and Request For Disclosure                                                Page 2

16. Synergy fired Shelton on February 7, 2011, when her supervisor, Michael Laudadio, transmitted an email with a termination letter attached to it. A true and correct copy of the letter attached to Laudadio's email is attached and incorporated by reference for all purposes as **Exhibit A**.

17. When Synergy fired Shelton, Shelton was still on FMLA leave.

18. When Synergy fired Shelton, Shelton was still pregnant.

19. After firing Shelton, Synergy assigned another employee to work at the Customer's facility.

20. After firing Shelton, Synegy assigned another employee to work at the Customer's facility. Unlike Shelton, that other employee was not pregnant.

21. After firing Shelton, Synegy assigned another employee to work at the Customer's facility. Unlike Shelton, that other employee was not pregnant at the time of the assignment, or at any time thereafter until the filing of this suit.

22. Synergy replaced Shelton with an employee who was not pregnant.

23. In January/February 2011, Synergy employed a certain Ms. Katy Shipp.

24. In January/February 2011, Synergy employed a certain Ms. Katy Shipp, and it assigned her to work at the facility of Customer.

25. Synergy fired Ms. Katy Shipp.

26. At the time when Synergy fired Ms. Katy Shipp, Ms. Shipp was pregnant.

27. Synergy fired Ms. Katy Shipp when Ms. Shipp was pregnant, and after Synergy had been advised that Ms. Shipp was pregnant.

28. Synergy fired Ms. Katy Shipp when Ms. Shipp was pregnant, and after Synergy had

been advised that Ms. Shipp was pregnant. Synergy then replaced Ms. Shipp with another employee who was not pregnant.

29. Synergy fired Ms. Katy Shipp when Ms. Shipp was pregnant, and after Synergy had been advised that Ms. Shipp was pregnant. Synergy then replaced Ms. Shipp with another employee who was not pregnant and was male.

30. Shelton filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC").

31. Shelton filed charge of discrimination number 450-2011-02098 with the EEOC.

32. Shelton filed charge of discrimination number 450-2011-02098 with the EEOC on February 25, 2011.

33. Shelton filed charge of discrimination number 450-2011-02098 with the EEOC on February 25, 2011. A true and correct copy of this charge is attached hereto as **Exhibit B**.

34. On August 25, 2011, the EEOC signed a letter titled in pertinent part *Notice of Right to Sue*.

35. On August 25, 2011, the EEOC signed a letter titled in pertinent part *Notice of Right to Sue*, and it mailed this letter to Synergy – specifically, to Andrea Billen, Synergy's Vice President of Operations.

36. On August 25, 2011, the EEOC signed a letter titled in pertinent part *Notice of Right to Sue*, and it mailed this letter to Synergy – specifically, to Andrea Billen, Synergy's Vice President of Operations. A true and correct copy of this letter is attached hereto as **Exhibit C**.

### Count One – Interference With FMLA Entitlements

37. Shelton incorporates by reference the allegations contained in paragraphs 1 through

36 as if those allegations were set forth verbatim.

38. The "entitlement" provision of the FMLA states that "it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." *See* 29 U.S.C. § 2615(a)(1).

39. Immediately prior to the time of Shelton's discharge, Synergy was Shelton's "employer," as that word is defined in 29 U.S.C. §2611(4)(A).

40. Immediately prior to the time of Shelton's discharge, Shelton met the definition of "eligible employee" as that phrase is defined in the FMLA. *See* 29 U.S.C. §2611(2).

41. The complications arising from Shelton's pregnancy, the treatment of which prompted her "health care provider," as that phrase is defined in 29 U.S.C. §2611(6), to place Shelton on bed rest, constitute a "serious health condition," as that phrase is defined in 29 U.S.C. §2611(11).

42. The complications arising from Shelton's pregnancy, the treatment of which prompted her "health care provider," as that phrase is defined in 29 U.S.C. §2611(6), to place Shelton on bed rest, constitute a "serious health condition," as that phrase is defined in 29 U.S.C. §2611(11), as evidenced by the fact that it was Synergy that placed Shelton on FMLA leave.

43. Synergy violated the FMLA with regard to the complications arising from Shelton's pregnancy when it fired her while she was on FMLA-protected leave. Synergy's decision to fire Shelton prejudiced Shelton.

44. Shelton is entitled to relief in the form of lost wages, salary, employment benefits, or other compensation denied or lost by reason of Synergy's violation of the FMLA.

45. Synergy's violation of the FMLA was willful. Thus, Shelton is entitled to an award

of liquidated damages.

46. Shelton seeks equitable relief in the form of reinstatement or, alternatively, front pay.

47. Shelton is entitled to recover reasonable attorney fees and costs.

48. Shelton is entitled to such other relief as may be appropriate, including pre-judgment and post-judgment interest.

### Count Two – Violation of Title VII (Pregnancy Discrimination Act)

49. Shelton incorporates by reference the allegations contained in paragraphs 1 through 36 as if those allegations were set forth verbatim.

50. Title VII provides that "it shall be an unlawful employment practice for an employer ... to discriminate against any individual ... because of such individual's ... sex." 42 U.S.C. §2003-2(a)(1). Because of the definition found in 42 U.S.C. §2000e(k), the word "sex," as used in Title VII, includes pregnancy.

51. Immediately prior to the time of Shelton's discharge, Synergy was Shelton's "employer," as that word is defined in 42 U.S.C. § 2000e(b).

52. Immediately prior to the time of Shelton's discharge, Shelton was an "employee" of Synergy, as that word is defined in 42 U.S.C. §2000e(f).

53. Shelton's pregnancy was a motivating factor in Synergy's decision to discharge her. By taking this action, Synergy violated Title VII.

54. Shelton has fully exhausted her administrative remedies, and she has fulfilled all prerequisites to the filing of this claim as follows:

A. Shelton filed charge of discrimination number 450-2011-02098 with the U.S. Equal Employment Opportunity Commission well within 300 days of Synergy notifying her of its

decision to discharge her. *See* **Exhibit B.**

B. On August 25, 2011, the EEOC prepared a letter, entitled in pertinent part *Notice of Right to Sue* ("Notice"), *see* **Exhibit C**, and Shelton brings this claim within 90 days of receiving the Notice.

55. In the event that Synergy satisfies its burden of production by proffering a legitimate, nondiscriminatory reason, Shelton reserves the right to assert both the pretext alternative and the mixed motive alternative.

56. By reason of Synergy's violation of Title VII, Shelton is entitled to an award of wages and employment benefits in the past – back pay – plus wages and economic benefits in the future – front pay – and other appropriate equitable relief.

57. Shelton is further entitled to recover compensatory damages in the past, which includes damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non pecuniary losses, as well as compensatory damages in the future, which includes damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non pecuniary losses.

58. Because Synergy engaged in such discriminatory practices with malice or with reckless indifference to Shelton's federally-protected rights, Shelton is entitled to an award of punitive damages against Synergy.

59. Shelton seeks recovery of all interest available to her.

60. As the prevailing party, Shelton is entitled to an award of attorney fees. She also requests reimbursement for expert fees as part of her costs.

### Count Three - Violation of the Americans with Disabilities Act (Actual Disability)

61. Shelton incorporates by reference the allegations contained in paragraphs 1 through 36 as if those allegations were set forth verbatim.

62. The Americans with Disabilities Act ("ADA") provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees . . . ." 42 U.S.C. §12112(a).

   A. NOTE: This includes as amended by the ADA Amendments Act of 2008 ("ADAAA"). *See* Americans with Disabilities Act of 2008, Pub. L. No. 110-325, 112 Stat. 3553, 110th Cong., 2d Sess. (Sept. 25, 2008), which took effect on January 1, 2009.

63. Immediately prior to the time of Shelton's discharge, Synergy was a "covered entity," as that phrase is defined in 42 U.S.C. §12111(2).

64. Immediately prior to the time of Shelton's discharge, Shelton was an "employee" of Synergy, as that word is defined in 42 U.S.C. §12111(4).

65. Synergy fired Shelton on the basis of Shelton's actual disability – namely, complications arising from Shelton's pregnancy. By taking this action, Synergy violated the ADA.

66. Shelton has fully exhausted her administrative remedies, and she has fulfilled all prerequisites to the filing of this claim as follows:

   A. Shelton filed charge of discrimination number 450-2011-02098 with the U.S. Equal Employment Opportunity Commission well within 300 days of Synergy notifying her of its decision to discharge her. *See* **Exhibit B.**

   B. On August 25, 2011, the EEOC prepared a letter, entitled in pertinent part *Notice of Right to Sue* ("Notice"), *see* **Exhibit C**, and Shelton brings this claim within 90 days of

receiving the Notice.

67. In the event that Synergy satisfies its burden of production by proffering a legitimate, nondiscriminatory reason, Shelton reserves the right to assert both the pretext alternative and the mixed motive alternative.

68. By reason of Synergy's violation of Title VII, Shelton is entitled to an award of wages and employment benefits in the past – back pay – plus wages and economic benefits in the future – front pay – and other appropriate equitable relief.

69. Shelton is further entitled to recover compensatory damages in the past, which includes damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non pecuniary losses, as well as compensatory damages in the future, which includes damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non pecuniary losses.

70. Because Synergy engaged in such discriminatory practices with malice or with reckless indifference to Shelton's federally-protected rights, Shelton is entitled to an award of punitive damages against Synergy.

71. Shelton seeks recovery of all interest available to her.

72. As the prevailing party, Shelton is entitled to an award of attorney fees. She also requests reimbursement for expert fees as part of her costs.

**Count Four – Violation of the Americans with Disabilities Act ("Regarded as" Disability)**

73. Pleading in the alternative, Shelton incorporates by reference the allegations contained in paragraphs 1 through 36 as if those allegations were set forth verbatim.

74. The Americans with Disabilities Act ("ADA") provides that "[n]o covered entity shall

discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees . . . ." 42 U.S.C. §12112(a).

    A. NOTE: This includes as amended by the ADA Amendments Act of 2008 ("ADAAA"). *See* Americans with Disabilities Act of 2008, Pub. L. No. 110-325, 112 Stat. 3553, 110th Cong., 2d Sess. (Sept. 25, 2008), which took effect on January 1, 2009.

75. Immediately prior to the time of Shelton's discharge, Synergy was a "covered entity," as that phrase is defined in 42 U.S.C. §12111(2).

76. Immediately prior to the time of Shelton's discharge, Shelton was an "employee" of Synergy, as that word is defined in 42 U.S.C. §12111(4).

77. Synergy fired Shelton on the basis of regarding Shelton as disabled – namely, from complications arising from Shelton's pregnancy. By taking this action, Synergy violated the ADA.

78. Shelton has fully exhausted her administrative remedies, and she has fulfilled all prerequisites to the filing of this claim as follows:

    A. Shelton filed charge of discrimination number 450-2011-02098 with the U.S. Equal Employment Opportunity Commission well within 300 days of Synergy notifying her of its decision to discharge her. *See* **Exhibit B**.

    B. On August 25, 2011, the EEOC prepared a letter, entitled in pertinent part *Notice of Right to Sue* ("Notice"), *see* **Exhibit C**, and Shelton brings this claim within 90 days of receiving the Notice.

79. In the event that Synergy satisfies its burden of production by proffering a legitimate, nondiscriminatory reason, Shelton reserves the right to assert both the pretext alternative and the mixed motive alternative.

80. By reason of Synergy's violation of Title VII, Shelton is entitled to an award of wages and employment benefits in the past – back pay – plus wages and economic benefits in the future – front pay – and other appropriate equitable relief.

81. Shelton is further entitled to recover compensatory damages in the past, which includes damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non pecuniary losses, as well as compensatory damages in the future, which includes damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non pecuniary losses.

82. Because Synergy engaged in such discriminatory practices with malice or with reckless indifference to Shelton's federally-protected rights, Shelton is entitled to an award of punitive damages against Synergy.

83. Shelton seeks recovery of all interest available to her.

84. As the prevailing party, Shelton is entitled to an award of attorney fees. She also requests reimbursement for expert fees as part of her costs.

### Request For Relief

Based on the foregoing, Plaintiff Ashley Shelton requests that Defendant Synergy Care, Inc. appear and answer, that Shelton have final judgment against Defendant as set forth herein, and for all such other and further relief to which Shelton may be justly entitled.

Dated October 11, 2011

Respectfully submitted,

By: _____
Wade A. Forsman
State Bar No. 07264257



P.O. Box 918
Sulphur Springs, TX 75483-0918
Tel.: 903.689.4144
Fax: 903.689.7001
forsmanlaw@verizon.net

**Attorney for Plaintiff Ashley Shelton**